1

Michael J. Flynn, Esq., *pro se*
PO Box 690
Rancho Santa Fe CA, 92067
Tel: (858) 775-7624
Email: mike@mjfesq.com

2

3

4

Philip H. Stillman, Esq., *pro se*
3015 North Bay Road, Suite B
Miami Beach, FL  33140
Tel: (888) 235-4279
Email: pstillman@stillmanassociates.com

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

11 | MICHAEL J. FLYNN and PHILIP STILLMAN
Plaintiffs,

Case No.: 3:19-cv-00239- MMD-CBC

12

vs.

**MOTION TO DISQUALIFY COUNSEL AND REQUEST FOR EVIDENTIARY HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**

13

14 | MICHAEL E. LOVE, an individual; and
JACQUELINE LOVE, an individual;
MICHAEL E. LOVE as TRUSTEE OF THE
MICHAEL LOVE FAMILY TRUST; MELECO,
INC., a Nevada corporation; and DOES 1-10,

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE**

2  **NOTICE THAT:**  ("Plaintiffs") hereby move the above referenced Court for an Order

3  disqualifying Defendants' counsel, Vince Chieffo and his law firm, Greenberg Traurig as

4  counsel in this case.

5    This motion is based on the below Memorandum of Points and Authorities filed herewith,

6  the affidavit of Michael Flynn and the exhibits attached thereto, the affidavit of Philip Stillman

7  and the pleadings and papers on file herein, and upon such other matters as may be presented to

8  the Court at the time of the hearing, if any. Respectfully Submitted,

9

10  Dated: December 19, 2019.   By:  Michael J Flynn and Philip Stillman, Esq.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Disqualify Counsel

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**1.**   **BACKGROUND**

3

Plaintiffs have asserted fraud claims against the Defendants.  As alleged in the Second

4

Amended Complaint, Defendants Mike Love and Jacquelyne Love ("**JPL**") fraudulently induced

5

Plaintiffs to enter into contingent fee agreements for the purpose of procuring Plaintiffs' legal

6

services in connection with Mike Love suing Irving Music, Abraham Somer and Brian Wilson

7

between August, 1992 and December, 1995.  The expressed purpose of the contingent fee

8

agreements, and the law suit, was to regain Mike Love's songwriting credits and copyrights to 35

9

of the Beach Boys' biggest hit songs, ("the Songs").  SAC, par.7, 20, 167. Flynn Aff. at par. 129.

10

The *contingent* fee component of the fee agreements entered into between Mike Love and

11

the Plaintiffs in this matter, as all lawyers, judges and law makers know in American

12

jurispridence involving *contingent* fee agreements, imposes a substantial risk on the part of the

13

lawyers, such as the Plaintiffs here.  That risk imposes a correlating duty to investigate the

14

client's claims; and an equal responsibility on the part of the clients to tell the truth; and not

15

withold material information, facts, documents and evidence; and particularly not to *knowingly*

16

misrepresent facts and evidence known to them  that would negatively impact or even legally

17

negate the client's claims.

18

The Plaintiffs here *thoroughly* fulfilled their duty to investigate the Loves' claims in a *7*

19

*month,* intense investigation into the critical Statute of Limitations, ("SOL"), issues and facts

20

involved in the underlying litigation, *before* the parties entered into a contingent fee agreement

21

on July 27, 1992.  The Plaintiffs took that risk, on their own time without compensation, as their

22

investigation proceeded between January and August, 1992. Mr. Flynn undertook this 7 month

23

investigation and entered into the contingent fee agreement because he believed Mike Love and

24

JPL were telling him the truth about the critical SOL issues and facts; and it was a justiciable

25

case to undo a grievous injustice.  Mike Love admits this in his book.  SAC, par. 27, 79 -82,

26

Exhibi5 to the SAC.

27

In that investiagtive time frame, the facts, documents and evidence available to the

28

Motion to Disqualify Counsel

1   Plaintiffs, specifically on the SOL issues and facts in the just previously litigated Brian Wilson

2   case appeared to prove the truth of the defendants' repeated, chronic, in every imaginable

3   context, false representations: That they had no knowledge of, or possessed documents involving

4   the Somer conflict of interest in the 1969 sale of the Beach Boys copyrights sale. *Id*. Flynn Aff

5   at par. 74 -80.

6       But the evidence now indisputably proves that both of the Defendants knowingly lied to

7   the Plaintiffs and intentionally defrauded them, throughout the Plaintiffs' 3 years of intense

8   litigation of their claims, right down to the present day.  Even more dispicably, Jacquelyne

9   Piesen Love, who at all times controlled Mike Love's documents, money and accounts,

10  knowingly defrauded Plaintiff, Michael Flynn, by allowing him to borrow $200,000 in the

11  middle of their case in order to keep their case alive. SAC at par. 95 – 96;   Flynn Aff. at par. 76 -

12  82.

13      She committed this fraud after the Loves had defaulted on their written agreement to pay

14  expenses, while she lied about their inability to fund their case.  As Mike Love had been

15  repeatedly warned about JPL's "background," but concealed from the Plaintiffs, JPL's intrinsic

16  deceit – her "schemes" – his mantra for decades, has now caught up with both Defendants. *Id*.

17  Flynn Aff. par 140.

18      The copyrights to the songs and the songwriring credits and royalties were lost to Mike

19  Love between 1962 and August, 1969, culminating in a sale, (the "Sale"), of the copyrights to

20  Irving Music in August, 1969.  That Sale resulted in Mike Love losing both his songwriting

21  credit on the Songs and his copyrights to them.  SAC, par 49 -50.  Attorney Abraham Somer

22  represented all parties involved in the Sale in a direct, undisclosed, unwaivable conflict of

23  interest. SAC at par. 75 82.

24      Between August, 1989 and December, 1995, the cases of *Wilson v Irving Music and*

25  *Somer*, (August, 1989 – August, 1992); and *Love v Irving Music, Somer and Wilson,* (August,

26  1992 – December, 1995), were being litigated in connection with the copyrights and songwriter

27  credits in the context of the 20 year old SOL issues and facts, (herinafter, alternatively, the

28

1  "underlying litigation or cases.").

2       The basic frauds initially perpetrated on the Plaintiffs between December, 1991 and July

3  27, 1992, and continuing to the present, involved *both* of the Defendants' making fraudulent

4  representations concerning *when* they acquired knowledge of attorney Abraham Somer's

5  conflicts of interest in the 1969 Sale; the production of documents in the Loves' files and

6  "archives" on this issue; the production of documents from Alan Jardine and his lawyer, Vince

7  Chieffo, the Beach Boys' corporation, BRI; and numerous fraudulent representations involving

8  the Defendants' interactions with Brian Wilson's attorneys, James Tierney, JJ Little and John

9  Branca on the SOL issues and facts; and on fundamental issues and facts permeating the case and

10  inducing Plaintiffs to enter into the *contingent* fee agreements. SAC at par. 167;  Flynn Aff at

11  par. 19, 71, 72, 76, 86.

12       Evidence of the Defendants' frauds on these issues first became conclusive between

13  April, 2017 and December, 2017 when JPL breached the Plaintiffs' fee agreements after 23 years

14  of quarterly payments, in the context of "blackmailing" her husband in order to gain a 50%

15  "community property" interest in the Songs.  Plaintiffs' therafter sought to understand the basis

16  for JPL's breaches and the "blackmail" of her husband.  SAC, par. 134 – 147, 158.  Flynn Aff. at

17  par. 19, 71, 72, 76, 86.   After two years of investigation on the issues and facts cited herein,

18  Plaintiffs have brought this law suit, and now bring this Motion, supported by the attached

19  Affidavit of Michael Flynn and exhibits attached thereto.

20       Before agreeing to represent Mike Love in July, 1992 , the Plaintiffs knew that the

21  biggest impediment to Mike Love prevailing against the above defendants was the defendants'

22  obvious statute of limitations, defenses for the loss of the songs in the Sale that had occurred

23  decades before.  Throughout the first 7 months of 1992, after a December, 1991, initial meeting

24  basically dominated by JPL, Mike Love and JPL made critical, intentional misrepresentations to

25  Plaintiffs, Stillman and Flynn, regarding the fundamental facts and issues on the SOL defenses

26  and Mike Love's authorship and loss of the songs. SAC at 75 – 92. Flynn Aff. par. 76 and 86.

27       The central issue in the underlying cases and the focus of Plaintiffs' initial investigation

28

became *when* did Mike Love, Jacquelyn Piesen Love, ("JPL"), or their attorney, Robert Kory, first acquire knowedge of the Somer conflict of interest.  Flynn Aff at par. 13, 73.

Throughout the 7 months of Plaintiffs investigation in 1992, two years before the Loves were even married, and throughout all of the litigation, JPL controlled *all* document production from the Mike Love files and "archives", and from the files of his other attorneys and representatives.  JPL also effectively dominated and controlled almost all representations, statements, testimony and document review by Mike Love.  JPL also controlled the disbursement of all moneys from their CPA firm. Flynn Aff. at par. 2 -8.

JPL is the source of the frauds in this case; and her frauds are the basis for the "blackmail" of her husband.  These frauds and blackmail are the cause of the breach of Plaintiffs' fee agreements.  SAC, par. 26, 28, 30, 36, 68, 83,  Flynn Aff. at 38, 46.

The Plaintiffs spent over 7 months intensely investigating the issues and facts before entering into the July 27, 1992 contingent fee agreement which measured their contingent fee on the "recovery" differential on the royalties and valuation of the songs.  SAC, par.  88-89.

The Defendants' counsel in this case, Vince Chieffo, played a critical role in the plaintiffs' investigation in the first 7 months of 1992 in connection with his representation of Alan Jardine, a member of the Beach Boys, and former President of the Beach Boys corporation. Mr. Chieffo's knowledge and conduct concerning the fundamental fraud issues and facts dating back to his representation of Mr. Jardine between 1989 and July, 1992 make him a material witness on the issues and facts central to Plaintiffs' claims. Flynn Aff. at par. 22, 23, 24, 28, 34, 35, 36, 37, 38.

Mr. Chieffo's critical role as a material witness began at least two years before Plaintiffs entered into the July 27, 1992 contingent fee agreement, and has continued thereafter during the underlying litigation, and right up to the present time involving his current representation of both of the Loves.  SAC, par. 38, 39, 73, 74. Flynn Aff *Id*.

Mr. Chieffo will be a material, percipient witness to the facts as it pertains to the Plaintiffs' fraud claims in violation of Nevada Rule of Professional Conduct 3.7.  Moreover, Mr.

1   Chieffo's prior representation of Al Jardine in the underlying litigation in connection with the

2   facts that are now relevant to Plaintiffs' fraud claims in this case, render him and his firm as

3   counsel for the Defendants in this case hopelessly in conflict with a number of his professional

4   duties, including his obligations to his former client, Al Jardine, under Rule 1.6 and his duty of

5   candor to this Court under Rule 3.3.  Flynn Aff. at par. 41 -61.

6        If Mr. Chieffo and his firm are not disqualified as counsel now, their continued role in

7   this case for the Defendants will inevitably result in a host of litigation delays, complications and

8   potential self serving concealment of discoverable evidence that will only prejudice the Plaintiffs

9   and potentially act as a fraud on this Court as this case moves forward.  To understand why Mr.

10   Chieffo and his firm cannot be counsel in this case, Plaintiffs need to first provide the Court with

11   the applicable factual background. *Id.*

12        The factual background of the underlying cases is the context for Plaintiffs' fraud claims;

13   and for JPL retaining Mr. Chieffo and the Greenberg firm; and it is the foundation on which JPL

14   is blackmailing her husband.  The Plaintiffs put together all these pieces of this complex,

15   fraudulent puzzle between April, 2017 and the present after going back 25–28 years and

16   reviewing exhibits, documents, depsoisitions and testimony in the underlying cases, particularly

17   in the context of JJ Little's revelations to Plaintiff, Philip Stillman in the fall of 2017. Flynn Aff

18   at par. 64 – 68.

19                **(1)        Brief History of the Beach Boys and the Somer Conflict of Interest**

20        Between 1961 and 1967, the Beach Boys wrote and recorded the bulk of their "hits".

21   SAC 44-47.  Mike Love and his cousin, Brian Wilson, were co-authors of both the lyrics and the

22   music for those hits.  *Id.*  Unfortunately, however, deception runs deep in the music industry and

23   haunts the Wilson/Love families.  During this time, Brian Wilson's father, Murry Wilson, was

24   the "manager" of the Beach Boys and in control of the "business" side of the band.  In that

25   capacity, Murry gave most of the songwriting credit for the Beach Boys songs to his son Brian

26   Wilson, thereby stealing all the credit from his nephew, Mike Love.  SAC at par. 44 – 54.

27        Murry also "stole" the more lucrative copyright credits to the Beach Boys songs by

28

- 6 -

Motion to Disqualify Counsel

1   placing ownership of those copyright credits into a new corporation that Murry formed called

2   "Sea of Tunes, Inc."  Between 1967 and the Sale in 1969, Abraham Somer represented Sea of

3   Tunes, Inc., the individual members of the Beach Boys (including Mike Love) and BRI. for the

4   purpose of selling all the copyrights in the Beach Boys songs to his client, Almo Irving Music,

5   Inc. *Id*.

6          Hence, Abraham Somer was irreconcilably conflicted in the Sale in 1969 by representing

7   the sellers and the buyer in the transaction where Mike Love (while represented by Abe Somer)

8   lost all of his rights in the Beach Boys hits for literally nothing, while giving Almo Irving Music

9   a windfall valued at the time, of between $10 and $20 million.  Sadly, Brian Wilson as Mike

10  Love's songwriting "partner" at the time, participated with his father, Murry, in this scheme to

11  defraud Mike Love since Almo Irving Music had agreed to pay Murry $700,000 for the rights to

12  the Beach Boys songs. SAC at par. 44 – 54; and Special Verdict, SAC, Exhibit 1.

13         Mike Love always swore that he  knew nothing about Abe Somer's conflict of interest in

14  1969 until he was informed by Plaintiff, Michael Flynn in the Spring of 1992.   SAC at 75 - 87. ;

15  Flynn Aff at par. 15, 131; and **Exhibits 9, 12 thereto**.  Mike Love's alleged ignorance of this

16  conflict of interest naturally tolled the statute of limitations for the breach of fiduciary duty and

17  fraud claims that Mike Love had against Mr. Somer, Irving Music, and his music writing

18  "partner" and cousin, Brian Wilson, for his participation in this 1969 scheme in which Mike

19  Love was defrauded.  SAC, par. 75 – 87; and Special Verdict at **Exhibit 1** to the SAC**.**

20         The Plaintiffs have only recently discovered that Mike Love's and JPL's representations

21  to Plaintiffs were not only false, but knowingly false.  The true facts are that Mike Love learned

22  of the Abe Somer conflict as early as 1985 when John Branca as attorney for the Beach Boys

23  corporation, Brother Records, Inc. ("**BRI**") conducted and reported upon his investigation

24  specifically directed at revealing the Somer conflict of interest.  John Branca revealed and

25  disclosed this conflict of interest to all the Beach Boys band members and their attorneys,

26  including Mike Love and Al Jardine at BRI board meetings and in the "Branca documents." JPL

27  and Mike Love have concealed their knowledge and the relevant "Branca Documents" to this

28

Motion to Disqualify Counsel

1    day.  Hence, JPL's blackmail. Flynn Aff. at par. 134 – 139. SAC at par. 158.

2                    **(2)**    **Mr. Chieffo's Knowledge of the Somer Conflict of Interest**

3          Mr. Chieffo currently represents the Defendants.  His previous representation of Al

4    Jardine during the *Wilson v.Almo Irving Music* litigation during 1991 conflicts him out of this

5    case under several of the Rules of Professional Conduct.  In the *Wilson v.Almo Irving Music*

6    litigation, the question of when the Beach Boys knew of the Somer conflict of interest was *the*

7    key fact issue for the defendants' SOL defenses.  Flynn Aff. at par. 26 – 47.

8          During the *Wilson v. Almo Irving Music* litigation, Mr. Chieffo knew that his client Mr.

9    Jardine had learned of the Somer conflict of interest as early as 1985, and possessed the Branca

10   documents.  In representing Al Jardine in connection with the discovery in the *Wilson v. Almo*

11   *Irving Music* case, Mr. Chieffo arranged with Brian Wilson's attorney, JJ Little, to conceal all of

12   the Branca documents, and perhaps others on the issue of when they all knew about the Somer

13   conflict in the 1969 sale.  SAC at par. 158;  Flynn Aff. at 26 – 47.

14         This is why during the deposition of Al Jardine, Mr. Chieffo delegated all of Al Jardine's

15   document production obligations to Brian Wilson's attorney, JJ Little.  Flynn Aff at par. 35 - 38;

16   and excerpts of Jardine Depo, **Exhiibt 3.**  Importantly, by delegating his client's, Al Jardine's,

17   discovery production obligations to Brian Wilson's attorney, Mr. Chieffo knowingly participated

18   in the scheme of Brian Wilson, his attorneys, and the Beach Boys to conceal the existence of the

19   "Branca documents", and therefore their knowledge as of 1986 of the Somer conflict of interest,

20   from the *Almo Irving* defendants. SAC ¶ 158. Flynn Aff. *Id*. That same concealment, and Mike

21   Love's and JPL's knowledge of the same, is at issue in this case.  Mr. Chieffo was a percipient

22   witness to, and active participant in, that concealment, as more fully explained in the affidavit of

23   Michael J. Flynn filed concurrently herewith.  Flynn Aff. at par. 9 – 40.

24         Mr. Chiefo will therefore be an inescapable and material witness in this case.  Moreover,

25   as explained below, his prior representation of Al Jardine implicates the same facts at issue in

26   this case.  As such, Mr. Chieffo as counsel in this case for the Defendants put him on an

27   imminent and irreconcilable collision course with his duties of confidentiality owed to Mr.

28

Motion to Disqualify Counsel

1 | Jardine under Rule 1.6 and duties of candor owed to this Court under Rule 3.7. *Id*.

2 |         **(3)**        **Overview of the Fraud Issues and Facts Arising out of the Underlying**

3 |                 **Litigation and Causing JPL's Blackmail and Breaches**

4 |       In connection with the SOL issues and facts, specifically involving the Somer conflict

5 | during the underlying litigation, first in the *Wilson v Irving* case, the dominant focus of the

6 | defense centered on the knowledge and conduct on this issue of the Beach Boys', Brian Wilson,

7 | Mike Love, Alan Jardine and Carl Wilson; and their corporation Brother Records, Inc., ("BRI"),

8 | of which the foregoing were all Directors and equal shareholders. Shortly into that case, the

9 | defense also began to focus their SOL discovery on the knowledge and conduct of the attorneys

10 | for the individual Beach Boys' and BRI, John Branca, James Tierney, JJ Little, John Mason, Ed

11 | Bernstein, Vince Chieffo, Robert Kory, and Ross Schwartz.  This SOL discovery involved over

12 | 80 depositions, numerous document requests, and numerous subpoenas. Flynn Aff. at par. 74 -

13 | 80.

14 |       The subpoenas served on Mr. Jardine by the defense in *Wilson v Irving,* and reviewed by

15 | Mr. Chieffo as his counsel in early 1991, before Mr. Jardine's deposition on April 23 and 24,

16 | 1991, were focused on the SOL issues and documents; and Mr. Jardine's knowledge of the

17 | Somer conflict of interest in the 1969 Sale, and their possession of documents relating to said

18 | issues and facts both from Mr. Jardine's files, Mr. Bernsrttein's files in the possession of Mr.

19 | Chieffo, and BRI's files.  Mr. Chieffo conferred with Mr. JJ Little on April 19, 1991, and again

20 | on April 22, 1991, the day before Mr. Jardine's deposition on April 23, 1991, in connection with

21 | said subpoenas. Flynn Aff at par. 35 - 37.

22 |       In the fall of 2017, Mr. Little admitted Mr. Chieffo's role in connection with Mr. Little's

23 | suppression and concealment of SOL documents in the possession of Mr. Jardine, his lawyers,

24 | and BRI.  SAC, par. 158. Affidavit of Philip Stillman.

25 |       Early in the *Wilson v Irving* case, the defense knew in that case, and/or had acquired

26 | evidence, from a Vice President of Defendant,  Irving Music, Ira Selsky, that John Branca, the

27 | attorney for both Brian Wilson, (1982–1986), and BRI, (1982–August 2, 1994) had conducted an

28 |

1  investigation in the 1984-85 period into the Somer conflict of interest in the 1969 Sale, in

2  representing all the parties to the Sale.  Flynn Aff. at par. 86 - 98; and Selsky Dec., **Exhibit 6**

3  thereto.  The Plaintiffs located the Selsky declaration  in the *Wilson v Irving* case, and at least

4  prior to the Irving/ Somer settlement, or likely before, discussed it with both Defendants. Flynn

5  Aff. *Id*.

6      In fact, on or about Feb. 19, 1985, Mr. Branca had commenced an investigation into the

7  Somer conflict of interest in the 1969 Sale; and had even retained a Los Angeles law firm to

8  investigate and report on the Somer conflict as the basis for a lawsuit.  Flynn Aff at par. 96 - 100;

9  **Exhibit 10**.  Mr. Branca reported the Somer conflict and the investigation to all of the Beach

10  Boys: Brian Wilson, Mike Love, Carl Wilson, and Alan Jardine; and to BRI , through its

11  officers, when Mr. Jardine was President; and to all of the individual Beach Boys' lawyers,

12  Robert Kory, Ed Bernstein, Ross Schwartz; and to Tom Hulett, the Beach Boys manager; and to

13  Eugene Landy, Brian Wilson's therapist/manager.  Flynn Aff at 113, 120, 121, 125, 126.

14      As best the Plaintiffs can figure out at this point, JPL engaged in a specific fraud

15  involving **Exhibit 10** at the time of the Irving settlement in September, 1993 when the Plaintiffs

16  retrieved it from the files of Beach Boys' manager, Tom Hulett, as arranged by JPL and Tom

17  Hulett's widow.  As shown at the subsequent video taped deposition of John Branca in

18  November, 1993, the Plaintiffs were operating under the misrepresentations of the Defendants,

19  as they had throughout the underlying litigation, that they had no knowledge of the Somer

20  conflict until they were informed by Mr. Flynn in the Spring of 1992.  Flynn Aff at par. 125 -

21  126; and excerpts of Branca depo, **Exhibit 5**.

22      In the Irving settlement discussions with both of the Loves in September, 1993, Mr.

23  Flynn presented both of them with a sworn Declaration of Mr. Branca, procured by JJ Little in

24  the *Wilson v Irving* case, in which he denied any knowledge of the Somer conflict prior to the

25  *Wilson v Irving* case in 1989, therby concealing and suppressing, along with all of the Beach

26  Boys, and their lawyers, including Mr. Chieffo, the Branca investigation and the Branca

27  documents in his 1985 investigation.  Flynn Aff. at par. 95 – 101.

28

Motion to Disqualify Counsel

1    Mr. Flynn also presented them with the December 4, 1986 Mason letter, (**Exhibit 8**),

2  which both Mike Love and Alan Jardine had been questioned about in their depositions in the

3  *Wilson v Irving* case.  The Loves again denied any knowledge of the Somer conflict or the

4  Branca investigation or documents until they were informed by Mr. Flynn. Flynn Aff. at par. 95

5  – 97.

6    Therafter, in November, 1993, the Plaintiffs took the deposition of Mr. Branca operating

7  under the frauds committed by the Loves.  The depsoition was marked by outright obstruction

8  and evasion when the Plaintiffs attempted to question Mr. Branca about his false declaration,

9  (**Exhibit 7**), and his Feb, 1985 letter obtained in the Hulett files.  Fortunately for the Loves, in

10 retrospect, Mr. Branca either claimed no memory or his lawyer and JPL obstructed meaningful

11 discovery.  Flynn  Aff at 84 – 100;  and **Exhibit 5.**

12   There is inferential evidence, supported in part by the Declaration of Mr. Selsky,

13 (**Exhibit 6**), that Mr. Landy was the original progenitor of a proposed Somer conflict of interest

14 lawsuit in the early 1980's to regain the copyrights, which he "discovered" while "treating" Brian

15 Wilson; but when Mr. Branca took over the Brian Wilson Trust in 1982, Mr. Branca opposed the

16 suit and was generally suspicious of Landy's intentions.  Mr. Branca thereafter sought a

17 "business resolution" with Irving Music in connection with a "joint administration" agreement of

18 the Beach Boys' copyrights held by Irving Music; and later involving the Beach Boys publishing

19 company, Brother Publishing, Inc.. Flynn Aff. at par. 121 – 138.

20   But Landy succeeded in having Brian Wilson fire Mr. Branca in 1986 while the Somer

21 conflict of interest lawsuit was being considered by BRI, Mike Love and Brian Wilson; and BRI

22 was considering a "business resolution" proposed by Mr. Branca contrary to the wishes of

23 Landy.  Mr. Branca remained BRI's lawyer until August 2, 1994, just before the commencement

24 of the *Love v Wilson* trial. Flynn Aff. at par. 92 et seq.

25   The December 4, 1986 letter of John Mason, (**Exhibit 8** to the  Flynn Aff at par.91 ) is

26 one of the few unconcealed, unsuppressed documents that somehow escaped being hidden by

27 BRI, Kory and others during the *Wilson v Irving* case.  That letter, evidencing knowledge by

28

Motion to Disqualify Counsel

Robert Kory of Mike Love's legal rights as early as 1986, contrary to all of their sworn
testimony, became a focal point in the defense discovery efforts in both of the underlying cases,
on *when* BRI, its lawyers and Directors, and officers, including Mike Love acquired knowledge
of the Somer conflict.  It was a central document in the depositions of Mike Love and Alan
Jardine, while represented by Mr. Chieffo, and other deponents.  Flynn Aff., **Exhibits 2  and 3**.

Later, in 1987–88, Mike Love and Carl Wilson sought to remove Landy from Brian's life
and have a Conservator appointed over Brian's assets.  A BRI civil war then erupted while the
Beach Boys and BRI attempted to hide all of the skeletons in their collective closet and
consciousness, including the 1985 Branca investigation into the Somer conflict.  *This* is the
source of JPL's "blackmail." Flynn Aff at par. 19, 20, 50, 72, 120, 136, 138.

After the *Wilson v Irving* suit was brought over *4 years late in August, 1989*, by Mr.
Tierney and Mr. Little on behalf of Brian Wilson, all applicable SOL's had potentially run.  Mr.
Tierney mollified Landy by having Brian give him a sizable chunk of the sought after recovery
in the *Wilson v Irving* case.  This is similar to the agreement Tierney made with Mike Love.

The reason that the suit was not brought in 1985 involved Eugene Landy's subsequent
conflicts with all of the Beach Boys, particularly Mike Love, who sought to have his brother,
Stan Love, appointed as a Conservator over Brian Wilson's assets in order to stop Landy from
embezzling Brian's money.

The resulting BRI civil war in which Landy ripped up a December 22, 1986 written
agreement with Mike Love to share in the proceeds of the *Wilson v Irving* law suit and share
50/50 in regaining their lost copyrights, and Mike Love's songwriting credit, was also concealed
by JPL and Mike Love from the Plaintiffs throughout the *Love v Wilson* case, continuing to the
present.  Incredibly, in 2016, when Mike Love's autobiography was being written, it appears
from p. 342 in that book that JPL inadvertently gave a copy of that agreement to Mike Love's
coauthor.  Throughout the underlying cases, Mike Love lied about this written agreement  -
another source of JPL's "blackmail."  **Exhibits 2, 4, 9, 12**.

Motion to Disqualify Counsel

**2.**    **ARGUMENT**

    **A.**    **Legal Grounds for Disqualification**

       The authority of federal courts to disqualify counsel "derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)(internal quotation marks omitted).  Federal courts can and should consider *sua sponte* whether disqualification is appropriate where an attorney's role in a case actually or potentially violates an ethical rule.  *See State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1090 (C.D. Cal. 2016); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, No., 2018 WL 538961, at *3 (S.D. Cal. Jan. 24, 2018).

       "Disqualification motions present courts with a delicate and sometimes difficult balancing task.  Close cases are resolved in favor of disqualification." *Hernandez v. Guglielmo*, 796 F.Supp.2d 1285, 1289–90 (D. Nev. 2011) (internal citation omitted); *Palmer v. Pioneer Inn Assocs.*, 19 F.Supp.2d 1157, 1162 (D.Nev.1998) ("Where disqualification is contemplated, 'any doubt is resolved in favor of disqualification.'").  "Nevertheless, '[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage." *Hernandez*, 796 F.Supp.2d at 1289-1290 (*quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted)).  "The moving party bears the burden of establishing an ethical violation or other factual predicate upon which the motion depends." *Id*.  "Attorneys admitted to practice before [the District of Nevada] must 'adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." *Id*.; LR IA 11-7(a).

      **(1)**    **Disqualification Under the Witness-Advocate Rule**

       As explained herein, Plaintiffs seek disqualification of Mr. Chieffo and his law firm because Mr. Chieffo's participation in this case as counsel for the Defendants will violate the witness-advocate rule and present a number of conflicts with his former client that will needlessly delay and complicate this litigation if not addressed now.

"The standards for disqualification of an attorney who may be a witness at trial derive from the applicable disciplinary rules, and the principal considerations under those rules are (1) whether an attorney ought to be called to testify on behalf of his client, … or (2) whether the attorney may be called other than on behalf of his client and his testimony is or may be prejudicial to the client …." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1048 (9th Cir. 1985) (internal citations omitted).

In the United States District Court for the District of Nevada, attorneys must abide by the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada. LR IA 11–7(a). Rule 3.7(a) of the Nevada Rules of Professional Conduct provides in relevant part as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work substantial hardship on the client.

The primary purpose of the witness-advocate rule is to "alleviate the risks that: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused." *Giuffre v. Dershowitz*, 2019 WL 5212368, at * 11 (S.D.N.Y. Oct. 16, 2019) (*quoting Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)).

Moreover, the federal courts will disqualify an entire law firm from being trial counsel even if one attorney in the firm is disqualified under the witness-advocate rule. *See Giuffre v. Dershowitz*, 2019 WL 5212368, at *4 (S.D.N.Y. Oct. 16, 2019).  The reasoning for disqualifying an entire firm is to "preserve the integrity of the adversary process …." *Giuffre v. Dershowitz*,

1   2019 WL 5212368, at *13.  The reason being that the dynamic of an attorney for the firm for

2   whom the disqualified attorney is employed raises the spectre that the examining attorneys will

3   lack sufficient independence from their witness and therefore will not "pursue a line of

4   questioning" because it could damage the reputation of their colleague/supervisor to the

5   detriment of their client.  *Id*. at 12.  It also raises the same three same concerns identified above.

6   *Id*. at 13.

7        Given the indisputable frauds already perpetrated in the underlying litigation: compare

8   the Branca declaration, **Exhibit 7,** with his Feb, 1985 letter, **Exhibit 10**; and compare that with

9   the excerpts of the Branca deposition, **Exhibit 5;** and compare all of that with Mike Love's

10   willingness to lie in his deposition, **Exhibit 2,** based on the instructions of JJ Little in order to

11   conceal the 1985/86 Branca  investigation, and Tierney promises to Mike Love, **Exhibits 9 and**

12   **12;** and taking into consideration JPL's control over all the Mike Love documents, including his

13   deposition transcript two years before they were even married when the Plaintiffs were

14   investigating this entire matter; and contextualize all of that  together with Mr. Chieffo's conduct

15   in the April 23, 1991 deposition of his client, Alan Jardine, **Exhibit 3**.  The foregoing along with

16   a mountain of related evidence compels the conclusion that either the Loves, the Greenberg firm,

17   or both have possession of the Branca documents and must produce them.  Production will

18   implicate them all in the frauds recited herein.  The Greenber firm must be disqualified.

19        Mr. Chieffo will undoubtedly be a witness in this case.  This court cannot abide the

20   continuation of these frauds and should deal with these issues before even considering

21   substantive motions.  Mr. Chieffo will therefore be a material witness not only in this case into

22   the underlying frauds but on this Motion itself.  These frauds are now before a second federal

23   court and permeate all of this litigation and on the federal court.  As a witness on this key fact,

24   Mr. Chieffo and his firm cannot, consistent with their ethical obligations under Rule 3.3 be

25   counsel for Mike Love and JPL.  The integrity of the judicial process and appearance of a

26   truthful advocate who is not also a key witness with a personal stake in the truth of what really

27   occurred in the underlying litigation, and is also occuring here in their representation of both of

28

1  the Loves, demands the disqualification of Mr. Chieffo and his firm at this early stage in the

2  litigation.

3  **(2)     Disqualification Based on Conflict of Interest**

4  Plaintiffs have standing to seek disqualification of Mr. Chieffo based on the inherent

5  conflict of interest between him representing the Defendants in this case, and his confidentiality

6  obligations to his former client, Al Jardine, under Nevada Rule of Professional Conduct 1.6.  As

7  explained below, Mr. Chieffo's confidentiality obligations that he owes to his former client, Al

8  Jardine, directly conflicts with his duties to the Defendants and this conflict will necessarily

9  "obstruct[] the orderly administration of justice" as well as the "just and lawful" determination of

10  Plaintiffs' claims in this case.  *Decaview Distribution Co. v. Decaview Asia Corp.*, No. C 99-

11  02555 MJJ (ME), 2000 WL 1175583, at *9 (N.D. Cal. Aug. 14, 2000) (explaining when a non-

12  client litigant has standing to seek disqualification of opposing counsel based on that counsel's

13  conflict of interest between his or her current and former clients); *Russel Rd. Food & Beverage,*

14  *LLC v. Galam*, No. 2:13-CV-0776-JCM-NJK, 2014 WL 3779078, at *2 (D. Nev. July 31, 2014).

15  ("The current standard applied to non client motions to disqualify ... requires a non client to

16  show they have a "personal stake in the motion," because of an "ethical breach [that] so infects

17  the litigation ... that it impacts the moving party's interest in a just and lawful determination of

18  her claims....").

19  Mr. Chieffo's representation of Al Jardine in the early 90s in connection with the *Wilson*

20  *v Almo Irving Music* and *Love v. Wilson* is not the only conflicted matter in which Mr. Chieffo

21  has been directly involved relevant to this case.  Additionally, Mr. Chieffo's present

22  representation of Mike Love directly conflicts with earlier litigation when Mike Love and Mr.

23  Jardine were direct adversaries in the period following Carl Wilson's death.  In that case,  *BRI v*

24  *Jardine*, litigated between 1998 and 2003, Mr. Love succeeded in having BRI sue Mr. Jardine to

25  effectively oust Mr. Jardine from the Beach Boys when Mr. Chieffo represented Mr. Jardine.

26  Thereafter, Mr. Chieffo either sued or threatened to sue Mr. Jardine.  Also potentially

27  relevant to this case are the statements of both Mr. Jardine and Mr. Chieffo to Mr. Flynn in

28

1   connection with that litigation accusing JPL of being responsible for having Mike Love oust Mr.

2   Jardine from the Beach Boys; and accusing JPL of having a "sordid" background.  Given that

3   context and statements made to Mr. Flynn by JPL in the *BRI v Jardine* litigation involving her

4   vendetta against Mr. Jardine for spreading those kinds of "rumors" about her past ,Mr. Jardine

5   may be a witness on those matters particularly on the credibility of JPL.   Flynn Aff at ___.

6   Ironically, these "rumors" turned into facts as Mike Love related them in April, 2017 to Michael

7   Flynn in connection with JPL's "schemes."

8          Mr. Chieffo's inherent conflict of interest between his current and former clients will

9   only serve to prejudice Plaintiffs and interfere with the orderly administration of their claims in

10  this case, while simultaneously affording Defendants an improper tactical litigation advantage

11  over Plaintiffs by allowing them to conceal and obscure facts through contrived layers of

12  "confidentiality" and "privilege".

13         Mr. Chieffo clearly gained confidential information on the most critical issue in this case

14  while representing Mr. Jardine in the *Wilson v. Almo Irving* case.  Now that he represents both of

15  the Loves in this case, which involves both of their conduct in the underlying litigation, and

16  specifically Mr. Chieffo's conduct and knowledge in the *Wilson v Irving* case, the confidential

17  information and privileged communications he gained as counsel for Mr. Jardine on this issue

18  will necessarily overlap, conflict and potentially damage either of the Defendants in this case.

19         Additionally,  Mr. Chieffo has self-serving interests in keeping the 1985 Branca

20  documents and investigation concealed given his participation in the Jardine deposition and the

21  production of subpoenaed documents which included the Somer conflict of interest investigation

22  in 1985 when Mr. Jardine was President of BRI, as well as a shareholder and Director.

23         His knowledge on these issues originally as the Jardine attorney, now as the Love's

24  attorney in this matter would also potentially damage them both, but his concealment of that

25  knowledge would provide a potential advantage to the Defendants in this case with regard to the

26  key facts and issues in this case.

27         It is contrary to the integrity of the adversary system in our federal courts, and in

28

Motion to Disqualify Counsel

1   violation of the rules of professional conduct for a lawyer to confer a benefit on his existing

2   clients by taking advantage of, and/or concealing and suppressing confidential and privileged

3   information he learned by representing a former client.  Moreover, the potential liability in this

4   case of BRI or of other potential parties who concealed the Branca investigation will

5   undoubtedly be an issue during discovery in this case.  If BRI intervenes to protect its interests,

6   the matter gets further complicated with Mr. Chieffo's representation of its former President

7   during the critical years involved in the Branca investigation.

8        It is likely when presented with the true facts and the full production of the "Branca

9   documents" copied to everyone in BRI, its shareholders, lawyers, managers and officers, and

10   others involved including Mr. Tierney and Mr. Mason – both Brian Wilson attorneys - the Estate

11   of Eugene Landy, and the Estates of JJ Little and Tom Hulett, and many others involved in the

12   *Wilson v Irving* case, that Mr. Branca when presented with documents will testify that he copied

13   everyone in BRI as its lawyer in connection with his 1985 investigation, which will necessarily

14   implicate Mr. Chieffo and his firm.

15        Based on all of the existing evidence, there is a compelling inference that Mr. Chieffo

16   and the Greenberg firm are likely in possession of the Branca documents copied in 1985 to his

17   fomer client, Alan Jardine when he was President of BRI, and at that time to his current client,

18   Mike Love. SAC at par 158.  That is the source of JPL's blackmail scheme.  Flynn Aff at par. 19,

19   20, 50, 72, 120, 136, 138.

20        Further, Mr. Chieffo will potentially use his role as former counsel for Al Jardine to

21   assert various privileges and confidentialities to not only give the Defendants in this case a

22   tactical litigation advantage, but also to prevent himself from personally being implicated in

23   improper concealment in connection with the underlying litigation.  This type of litigation

24   gamesmanship will inevitably result in further litigation, complications, delays, and obfuscations

25   in this case.  And it is for this precise reason that federal law affords Plaintiffs standing to seek

26   disqualification of Mr. Chieffo in this case due to his imminent collision with his obligations to

27   Al Jardine under Rule 1.6.

28

Motion to Disqualify Counsel

1

**(3)     Rule 3.3 Requires Mr. Chieffo's and His Firm's Disqualification Now**

2      As explained above, federal courts have the inherent authority to disqualify counsel in

3  order to maintain the appearance of a zealous, yet impartial and truthful adversary process.

4  Nevada Rule of Professional Conduct 3.3 imposes on counsel a duty of candor to this Court

5  concerning the material facts that counsel presents and argues to the Court.  Mr. Chieffo as

6  counsel for the Defendants in this case has a duty of candor to the Court regarding his knowledge

7  of the Branca documents and the 1985 Branca investigation of the Somer conflict of interest in

8  the underlying litigation.  He is now in a position in this case, after at least knowing of the

9  concealment of documents and the knowledge of his clients, both past and present in the

10  underlying litigation, to attempt to use the attorney client privilege or a privilege log with respect

11  to documents in his possession either given to him by the Loves, Ed Bernstein or Al Jardine.

12      Yet the duty of candor that Mr. Chieffo and his firm owe to this Court and the adversary

13  process (i.e. discovery) puts him into conflict with his clients in this case because his knowledge

14  of the Somer conflict of interest in the underlying litigation is necessarily detrimental to the

15  interests of his clients in this case.  Mike Love testified under oath in his depositions, in the

16  evidentiary hearing, and before the jury, and recited in his book that he didn't learn about the

17  Somer conflict of interest until he was informed by Mr. Flynn in early 1992.

18      And yet, the Branca documents, the files of Al Jardine, Mr. Chieffo's correspondence

19  with Brian Wilson's attorneys in the underlying litigation, will all demonstrate that Mike Love

20  knew about the Somer conflict of interest by at least 1985.   This will prove the Plaintiffs' fraud

21  claims.

22      Mr. Chieffo's role as counsel for the Defendants in this case immediately and

23  irreconcilably compromises and taints his duty of candor to this Court under Nevada Rule of

24  Professional Conduct 3.3.

25  **3.      CONCLUSION AND REQUEST FOR EVIDENTIARY HEARING**

26      For the reasons described herein and in the supporting affidavit of Michael J. Flynn, Mr.

27  Chieffo and his firm must be disqualified as counsel for the Defendants at this early of this

28

litigation as a result of the inevitable and irreconcilable conflict, and/or appearance of conflict and violation of Mr. Chieffo's professional obligations under Nevada Rules of Professional Conduct 1.6, 3.3 and 3.7.  The orderly administration of Plaintiffs claim in this case demands nothing less.

Moreover, given the highly fact intensive nature of this Motion, Plaintiffs believe that an evidentiary on the facts and issued raised hereby is necessary and appropriate.

Respectfully submitted this 19th day of December, 2019

/s/ Michael J. Flynn

Michael J. Flynn, Pro Se

/s/ Philip Stillman

Philip Stillman, Pro Se

Motion to Disqualify Counsel

1

## <u>CERTIFICATE OF SERVICE</u>

2      Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing **MOTION**

3  **TO DISQUALIFY COUNSEL AND REQUEST FOR EVIDENTIARY HEARING;**

4  **MEMORANDUM OF POINTS AND AUTHORITIES** as well as the supporting affidavits

5  and exhibit were filed electronically via the Court's CM/ECF system and served on all parties of

6  record who have made an appearance in this case and are registered for participation in CM/ECF

7  on this date.

8      Dated this 19th day of December, 2019

9

10  <u>/s/Philip H. Stillman</u>

11  Philip H. Stillman, Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Disqualify Counsel