UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL J. FLYNN, *et al.*,

                       Plaintiffs,

    v.

MICHAEL LOVE, *et al.*,

                       Defendants.

Case No. 3:19-cv-00239-MMD-CLB

ORDER

## I.  SUMMARY

On March 30, 2021, the Court granted in part and denied in part Defendants' previous motion to dismiss, and gave Plaintiffs Michael Flynn and Philip Stillman (together, "Plaintiffs") leave to amend their dismissed claims. (ECF No. 120.) Thereafter, Plaintiffs filed a fourth amended complaint (ECF No. 121 ("FAC")) against Defendants Michael and Jacquelyne Love, Meleco, Inc., and Trustee Michael Love of the Michael Love E. Family Trust (collectively, "Defendants").

Before the Court now is Plaintiffs' motion to strike a notice filed by Michael Love ("Love") rejecting a non-binding arbitration award and Love's request for a trial *de novo* following arbitration proceedings that took place in California. (ECF No. 122.) Plaintiffs also move for a speedy hearing on their seventh cause of action for declaratory judgment. (ECF No. 143.) Additionally, Defendants move to both partially dismiss claims and to strike various parts of Plaintiffs' FAC. (ECF Nos. 124, 125.) As further discussed below, the Court will grant Defendants' motion to partially dismiss the FAC, deny both parties' motions to strike, and deny Plaintiffs' motion for a speedy hearing.

///

///

///

## II.   BACKGROUND

This action arises from contractual disputes pertaining to a settlement involving the copyrights of 35 songs and events surrounding these songs dating back to the 1960s. As mentioned above, the Court previously issued an order on March 30, 2021. (ECF No. 120.) In that order, the Court denied Plaintiffs' previous motion for summary judgment on their seventh cause of action in their third amended complaint ("TAC") seeking declaratory judgment. (*Id.*) The Court found that a genuine issue of material fact exists as to whether there was a fully executed agreement between the parties. (*Id.* at 12-14.) Additionally, the Court granted in part and denied in part Defendants' previous motion to dismiss, and granted Plaintiffs leave to amend their TAC. (*Id.* at 14-22.) Plaintiffs have since filed their FAC. (ECF No. 121.) The following facts are taken from Plaintiffs' FAC,[1] unless noted otherwise.

In November 1961, the Beach Boys music group was formed and included Love and Brian Wilson ("Wilson") as members. (*Id.* at 23.) Wilson's father, Murry Wilson, was the Beach Boys' manager and took control of the copyrights and publishing of the group's songs. (*Id.*) Between 1961 and 1964, Love and Wilson co-wrote many of the Beach Boys' songs and albums. (*Id.*) However, Love was not given songwriting credits on the copyright applications of these songs. (*Id.*)

In 1967, Abraham Somer became attorney for both the Beach Boys and Murry Wilson. (*Id.*) Somer incorporated the Beach Boys as Brother Records, Inc., and made Murry Wilson sole proprietor of Sea of Tunes, Inc., which held the copyrights and publishing rights to the Beach Boys' songs. (*Id.*) In 1969, Sea of Tunes, Inc. was sold to Almo Irving Music (the "1969 Sale") with Somer representing the parties, along with

---

[1]Similar to Plaintiffs' TAC (ECF No. 50), the allegations in the 71-page FAC relate to numerous events and individuals spanning six decades. (*See* ECF No. 120 at 2, n.4.) Because of the style and manner in which the FAC is written, and the Court's difficulties in comprehending the allegations at times, Plaintiffs' claims require the Court to construe facts as stated herein.

Additionally, the Court notes that much of the factual allegations in the FAC remain identical to that of the TAC. (*See* ECF No. 50.)

1 | Brother Records, Inc., and Beach Boys' members. (*Id.*) At the time, Somer's conflict of
2 | interest was allegedly concealed, Wilson was mentally incompetent, and Love received
3 | nothing from the 1969 Sale. (*Id.* at 23-24.)

4 | Around 1985, Somer's conflict of interest was discussed at Brother Records'
5 | board meetings. (*Id.* at 24.) An investigation into the matter was conducted from 1985 to
6 | 1986 by attorneys John Branca and James Tierney, and by Eugene Landy. (*Id.*)
7 | Additionally, members of the Beach Boys and others were involved in the investigation
8 | and corresponded with Branca. (*Id.* at 24-25.) Plaintiffs allege that there are documents
9 | and correspondences during this period regarding the investigation and its purpose. (*Id.*
10 | at 25.)

11 | Attorney Tierney met with Love on December 5, 1986, and they entered into a
12 | written agreement on December 22, 1986, securing Love's cooperation in a lawsuit
13 | Wilson was pursuing to regain copyrights of the Beach Boys' songs. (*Id.* at 25-26.) For
14 | his cooperation, Love would receive "30% of the [Wilson] case recovery, restoration of
15 | [Love's] songwriting credit and copyrights and a minimum of $2 million for past unpaid
16 | songwriting payments that had been paid to [Wilson]." (*Id.* at 26.) Nearly three years
17 | later in August 1989, Wilson filed a lawsuit against Almo Irving Music, Somer, and
18 | Somer's law firm, to regain copyrights to the Beach Boys' songs ("Wilson Case").[2] (*Id.* at
19 | 26-27.) In the Wilson Case, Wilson argued the defendants concealed Somer's conflict of
20 | interest from the date of the 1969 Sale until the fall of 1988, and additionally argued that
21 | Wilson was legally incompetent. (*Id.*)

22 | **A.    The 1992 Agreement**

23 | Love and Jacquelyne Love (together, the "Loves") met Michael Flynn ("Flynn") in
24 | December 1991. (*Id.* at 29-30.) Jacquelyne Love ("Jacquelyne") disclosed to Flynn the
25 | legal claims she believed Love had in numerous Beach Boys songs he co-authored with
26 | Wilson, and the ongoing Wilson Case at the time. (*Id.*) She further disclosed that there

27 |
28 | [2]The Wilson Case was eventually settled in favor of Wilson for $10 million and he forfeited recovery of the copyrights. (*Id.* at 34.)

1    was no written agreement evidencing a promise of what Love was to receive from the

2    Wilson Case. (*Id.* at 30.)

3        From January to July 1992, Plaintiffs investigated the Wilson Case. (*Id.* at 30-31.)

4    Plaintiffs informed the Loves that Somer's conflict of interest in the 1969 Sale was the

5    basis to defeat the statute of limitations issue in the Wilson Case. (*Id.* at 31.) At the time,

6    California had a one-year statute of limitations to sue Somer and his law firm. (*Id.*)

7    Plaintiffs allege that, at the time, the Loves knew about the statute of limitations and

8    about the conflict of interest. (*Id.*)

9        Plaintiffs thereafter entered into an agreement with Love to pursue Love's claims

10   to the copyright of the Beach Boys' songs on July 27, 1992 ("1992 Agreement"). (*Id.* at

11   33.) Under the 1992 Agreement, Plaintiffs agreed to pursue Love's case on a sliding

12   scale contingent fee agreement with an expense retainer to be replenished when it fell

13   below $7,000. (*Id.*) When the Agreement was made, Jacquelyne stated that all financial

14   matters, documents production, and related questions should go to her. (*Id.*) The

15   Agreement was mutually swapped in the mail with cover letters signed by Love and

16   Flynn, and a copy of the Agreement with only Love's signature was sent months later to

17   The Ashley Firm, a certified public accountant firm. (*Id.*) Additionally, a second signed

18   copy of the Agreement occurred at a Beach Boys rehearsal. (*Id.*)

19       From July 1992 until February 1995, Plaintiffs represented Love in a lawsuit

20   against Almo Irving Music and Wilson ("Love Case"). (*Id.* at 33-34.) During this time,

21   Plaintiffs met with Tierney and Little, who refused to acknowledge any agreement with

22   Love or that Love co-authored 35 Beach Boys songs. (*Id.* at 34.) Tierney and Little

23   claimed then that they spoke to the Loves about the statute of limitations issue in the

24   Love Case prior to Love's deposition in the Wilson Case in March of 1991. (*Id.*)

25       **B.    The 1993 Agreement**

26       Beginning around January 1993, the expense retainer pursuant to the 1992

27   Agreement was not being replenished and defaulted. (*Id.* at 35.) Flynn borrowed

28   $200,000 to maintain the Love Case. (*Id.*) In September 1993, Almo Irving Music

1    offered to settle Love's claims. (*Id.*) However, conflict and disagreement arose between

2    the Loves. (*Id.* at 35-36.) Jacquelyne had intentions to obtain the settlement money to

3    remodel the Love's property and to get married. (*Id.*) Flynn thus prepared an agreement

4    ("1993 Agreement") between him and Love. (*Id.* at 36.) The Agreement provided that

5    Plaintiffs would "'own' 30% of [Love's] rights and income in the songs recovered" and

6    Plaintiffs would pay the expenses from the Love Case. (*Id.* at 36-37.) Jacquelyne gave

7    Flynn a fully executed 1993 Agreement. (*Id.* at 36.) Love, who was present, said nothing

8    about the signature on the Agreement. (*Id.*) The Loves married in April 1994. (*Id.* at 37.)

9         **C.    The 1994 Agreement**

10        On December 12, 1994, a jury return a special verdict in favor of Love. (*Id.* at 38.)

11   Plaintiffs and the Loves engaged in discussions after the verdict. (*Id.*) Jacquelyne took a

12   lead in the discussions and control of the decision making. (*Id.*) She and Plaintiffs

13   agreed that Plaintiffs were to be paid 30% of all fees on songwriting royalties going

14   forward plus 30% of the cash portion of the settlement. (*Id.* at 39.) She produced to

15   Plaintiffs the signed 1994 Agreement ("1994 Agreement") in the presence of Love. (*Id.*)

16        **D.    Following the Agreements**

17        Between 1995 to 1999, Plaintiffs' law firm represented Love on several matters

18   and Flynn routinely consulted Love on non-litigation matters. (*Id.*) From 1995 to 2017,

19   the Loves provided accounting on a regular basis on the royalties and other income

20   received from the 35 Songs. (*Id.* at 63.) Jacquelyne controlled and paid Plaintiffs

21   quarterly their 30% contingent fee but this amount is alleged to be inaccurate. (*Id.* at

22   17.) Over the past 25 years, Jacquelyne diverted money owed to Plaintiffs over to the

23   Michael Love E. Family Trust. (*Id.* at 44.) Additionally, sometime between 2011 to 2012,

24   Jacquelyne requested old files in the Love Case, and Flynn complied by turning "over

25   virtually all of his files." (*Id.* at 40.) This included the original fee agreement files. (*Id.* at

26   41.)

27        In early 2017, Love called Flynn and stated, "[Jacquelyne] cheated you and your

28   partners on royalties." (*Id.* at 42-43.) Between March and April 2017, Love told Flynn the

following: Jacquelyne demanded 50% (community interest) of money from the songs, she cheated Flynn with regard to BMI income, switched BMI to ASCAP and took a million dollars on a three-year contract without paying Flynn and his partners, she failed to pay them on time by holding checks, she was seeking to get $2.5 million from music publishing company BMG on upcoming copyright reversions by selling the songwriter royalties. (*Id.* at 43.) In April 2017, Plaintiffs were denied approximately $200,000 when the Loves "switched from BMI to ASCAP with three advance annual payments of $333,000, of which two had been paid in the amount of $666,000" to Defendants. (*Id.* at 18.) In May 2017, Jacquelyne stated to Flynn that she "would never have allowed Mike Love to agree to the 30% of the gross recovery required by the fee agreements" and the "fee agreements should have stopped after 7 years." (*Id.* at 47.) She further stated that "Love never signed the 30% agreement." (*Id.*)

Plaintiffs' TAC sets forth nine causes of actions, but three are relevant to this order. (*Id.* at 53-70.) Plaintiffs' first cause of action is fraud, alleging that Defendants engaged in a "pattern of fraud" that directly caused Plaintiffs to enter into the three Agreements. (*Id.* at 53-62.) The seventh cause of action seeks a declaratory judgment against the Loves regarding the validity and enforceability of the three Agreements. (*Id.* at 67-69.) The eighth cause of action alleges fraudulent transfer by the Loves. (*Id.* at 69.) As a result of Defendants' actions, Plaintiffs allege that they have been damaged in the amount of at least $32 million and seek punitive damages in excess of $52.5 million. (*Id.* at 62.) As set forth in paragraph 8 of the relief sought, Plaintiffs' prayers for relief include striking Defendants' rejection of the arbitration award, enter judgment on the validity of the 1992 Agreement, and conduct a damages hearing or trial. (*Id.* at 71.)

### E.    Arbitration

Further relevant to this order, Plaintiffs filed an application for arbitration with the San Diego County Bar Association ("SDCBA") on May 14, 2019. (ECF No. 108-1.) The non-binding five-day arbitration hearing before a panel of arbitrators took place in October 2020. (*Id.*) On February 1, 2021, the panel issued a Fee Arbitration Findings

and Award ("arbitration award"). (*Id.*) Love rejected the arbitration award and filed with this Court his notice of rejection of the arbitration award and a request for a trial *de novo*, citing California Business and Professions Code ("Cal. Bus. & Prof. Code") § 6204(b). (ECF No. 108.)

## III.  DISCUSSION

Because there are several pending motions, the Court will begin by addressing Defendants' motion to partially dismiss the FAC and will grant the motion, therefore dismissing Plaintiffs' fraud and fraudulent transfer claims. The Court will then address Defendants' motion to strike portions of the FAC, followed by Plaintiffs' motion to strike Love's rejection of the arbitration award. The Court will deny both parties' strike motions for reasons discussed below. The Court will conclude by addressing Plaintiffs' motion for a speedy hearing on their seventh cause of action and will deny the request because the Court has previously addressed this issue.

### A.   Defendants' Motion to Partially Dismiss[3]

Defendants argue their motion to partially dismiss claims in the FAC should be granted under Local Rule 7-2(d) because Plaintiffs' opposition to their motion was untimely. (ECF No. 135 at 3-4.) Defendants additionally argue Plaintiffs' fraud and fraudulent transfer claims should be dismissed under Federal Rules of Civil Procedure 12(b)(6). (ECF No. 124 at 8-12.) While the Court agrees with Defendants that Plaintiffs' opposition is untimely, thus constituting consent to Defendants' motion under LR 7-2(d), in the interest of resolving the issues on the merits, and in exercising its inherent authority to manage its docket, the Court declines to grant Defendants' motion on this basis.[4] Because Plaintiffs have requested the Court dismiss their fraudulent transfer

---

[3]The Court has reviewed Plaintiffs' response and Defendants' reply. (ECF Nos. 132, 135.) Additionally, the Court notes the caption of Defendants' motion to partially dismiss erroneously references the TAC, when the motion itself seeks to dismiss claims in the FAC. The Court construes the motion as moving to dismiss claims in the FAC.

[4]Plaintiffs' opposition to Defendants' motion was due on May 12, 2021. (ECF No. 126.) When the deadline passed, Defendants filed a notice of Plaintiffs' non-opposition to their motion, and Plaintiffs thereafter filed their untimely opposition that same day.

1  claim (ECF No. 132 at 3-4), the Court will therefore only address dismissal of Plaintiffs'

2  fraud claim.

3       Defendants argue that Plaintiffs' fraud claim should be dismissed under Rule

4  12(b)(6) because Plaintiffs have made no effort to allege facts evidencing Plaintiffs

5  suffered damages proximately caused by the fraud. (ECF No. 124 at 8-11.) Specifically,

6  Defendants argue the fraudulent actions that Plaintiffs allege occurred after the Love

7  Case settled, even as recently as 2016 to 2021, and that the damage suffered is not a

8  cognizable fraud damage. (*Id.* at 10.) Plaintiffs appear to counter that they sufficiently

9  allege the required "fraudulent half-truths" and "misleading statements" the Loves made

10 to Plaintiffs to cover up their "scheming." (ECF No. 132 at 9-12.) Plaintiffs point to both

11 Love's knowledge of Somer's conflict of interest and Love's suppression of this

12 knowledge, and Jacquelyne's fraudulent representation that Love's signatures on the

13 three Agreements were valid, as actions taken by Defendants that led to Plaintiffs'

14 damages. (*Id.* at 10.) Plaintiffs' arguments are unconvincing.

15      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

16 relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

17 provide "a short and plain statement of the claim showing that the pleader is entitled to

18 relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

19 While Rule 8 does not require detailed factual allegations, it demands more than "labels

20 and conclusions" or a "formulaic recitation of the elements of a cause of action."

21 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual

22 allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at

23 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

24

25 (ECF Nos. 130, 132). While *pro se* litigants are entitled to some latitude and leniency on
   procedural matters, *see Perrotte v. Johnson*, Case No. 1:15-cv-00026-LJO-SAB (PC),
26 2017 WL 35499, at *3 (E.D. Cal., Jan. 3, 2017) (collecting cases), the Court cannot
   ignore that Plaintiffs are both licensed attorneys who have elected to represent
27 themselves in this action. (*See* ECF No. 120 at 1, n.1.) Moreover, Plaintiffs' opposition
   is silent on their untimely filing—thus offering no "excusable neglect" as provided in LR
28 IA 6-1(a). The Court warns Plaintiffs that further failure observe procedural rules will be
   viewed unfavorably.

1    matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

2    (quoting *Twombly*, 550 U.S. at 570).

3          At issue is Plaintiffs' fraud claim. As the Court stated in its previous order, the

4    elements of fraud under California law[5] are: "(1) misrepresentation, (2) knowledge of

5    falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages." *B. Braun*

6    *Med., Inc. v. Rogers*, 163 F. App'x 500, 507 (9th Cir. 2006) (citing *Seeger v. Odell*, 18

7    Cal. 2d 409, 414 (Cal. 1941)). "A successful fraud claim also requires a showing of

8    proximate causation—i.e., 'that damages were sustained as a proximate cause of the

9    fraudulent conduct.'" *Ronpak, Inc. v Elecs. for Imaging, Inc.*, Case No. 14-cv-04058-

10    JST, 2015 WL 179560, *2 (N.D. Cal. Jan. 14, 2015) (citing *B. Braun*, 163 Fed. App'x at

11    507). Claims based on fraud fall within Rule 9(b)'s heightened pleading standard. *See*

12    *id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)).

13          In the Court's previous order, the Court granted Plaintiffs leave to amend their

14    fraud claim because they had failed to allege any damages proximately caused by the

15    alleged fraud in the TAC. (ECF No. 120 at 15-16.) Additionally, the Court stated that "it

16    remains unclear how Somer's conflict of interest or the produced signatures were the

17    proximate cause of Plaintiffs' damages." (*Id.* at 16.) The Court finds Plaintiffs' revised

18    fraud claim suffers from the same defects as before. It remains unclear to the Court how

19    the Loves' false representation of their knowledge of the conflict of interest was the

20    proximate cause of Plaintiffs' damages. The Court additionally finds that Plaintiffs have

21    again failed to allege with specificities the elements of fraud. *See B. Braun Med., Inc.*,

22    163 F. App'x at 507. Plaintiffs further fail to allege proximate causation in that their

23    damages were the result of the conflict of interest being concealed and the result of

24    Jacquelyne producing Love's signatures. *See Ronpak, Inc.*, 2015 WL 179560, at *2.

25          Moreover, Rule 8(2) requires that pleadings must contain "a short and plain

26    statement of the claim showing that the pleader is entitled to relief[.]" The Court, having

27

28         [5]The Court previously determined that California law should apply to Plaintiffs' fraud claim. (ECF No. 120 at 7-8.) As such, the Court applies California state law here.

reviewed the FAC, finds that Plaintiffs have ignored Rule 8(2). The allegations are difficult to follow and contain several run-on sentences throughout the 71-page FAC. While Plaintiffs' response points to the fraudulent actions being the conflict of interest and the false production of signatures, the FAC includes multiple other alleged fraudulent conduct or "pattern of fraud" within the first cause of action. (ECF No. 121 at 53-62.) Notably, Plaintiffs state that Jacquelyne's "schemes began at least in 2003," which raises confusion and doubt as to whether her alleged fraudulent actions began in the 1990s with the production of Love's signature. (*Id.* at 5 (internal quotes omitted).) This makes it difficult for the Court to decipher whether the claim is properly alleged, especially given the heightened pleading standards for fraud under Rule 9(b). *See Ronpak, Inc. v. Elecs. for Imaging, Inc.*, Case No. 14-cv-04058-JST, 2015 WL 179560, at *2 (N.D. Cal. Jan. 14, 2015) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1079, 1105 (9th Cir. 2003)). As such, the Court finds that Plaintiffs have again failed to state a fraud claim, and dismissal is warranted under Rule 12(b)(6). For the reasons stated herein, Defendants' motion to partially dismissed the FAC is granted. Both Plaintiffs' fraud and fraudulent transfer claims are dismissed.

### B.    Defendants' Motion to Strike[6]

Citing Rules 12(f) and 15(a)(2), Defendants move to strike several parts of the FAC. (ECF No. 125.) This includes striking Plaintiffs': (1) references to the non-binding arbitration; (2) legal arguments that are not factual allegations; (3) attacks on Defendants' counsel, and (4) prayer for relief. (*Id.* at 13-17.) Because the Court disagrees with Defendants, the Court will first set forth the legal standard for Rule 12(f) motions. The Court will then discuss Defendants' misplaced reliance on Rule 15(a)(2), followed by why striking references to the non-binding arbitration and the other parts of the FAC are unwarranted.

---

[6]The Court has reviewed Plaintiffs' response and Defendants' reply. (ECF Nos. 132, 136.)

### 1.   Legal Standard

Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally regarded with disfavor." *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) (quoting *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)). The purpose of a motion to strike is to avoid "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). "Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *Roadhouse*, 290 F.R.D. at 543 (quoting *Mag Instrument*, 595 F. Supp. 2d at 1106)). "Whether to grant a motion to strike lies within the sound discretion of the district court." *Id.*

### 2.   Rule 15(a)

Because the Court previously granted Plaintiffs leave to amend their dismissed claims in its previous order, Defendants argue that several parts of the FAC should be stricken because Plaintiffs have violated Rule 15(a). (ECF No. 125 at 13.) Despite Plaintiffs' silence in their opposition in addressing this argument, the Court nevertheless finds Defendants' argument unconvincing.

Rule 15(a) sets forth the rules governing amendments to pleadings. Subsection 2 states in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants are correct that the Court's previous order gave Plaintiffs leave to amend their dismissed claims "to the extent Plaintiffs are able to cure the deficiencies address" in that order. (ECF No. 120 at 22.) However, the Court is disinclined to grant Defendants' motion to strike in its entirety under Rule 15(a) because Plaintiffs are not alleging new causes of action outside those previously brought in their prior complaint. Although additional facts

are alleged and additional opinion statements are offered in the FAC, the Court finds that they do not rise to the level that warrant being stricken. Because motions to strike are generally disfavored and Defendants have failed to sufficiently show they would suffer prejudice were their motion be denied, *see Roadhouse*, 290 F.R.D. at 541, 543, the Court denies Defendants' motion to strike under Rule 15(a).

### 3.    Non-Binding Arbitration

Defendants argue that Plaintiffs' mentioning of the non-binding arbitration and the arbitration award in the FAC should be stricken under Cal. Bus. & Prof. Code § 6204(e). (ECF No. 125 at 14-16.) Defendants further argue the arbitration proceedings were confidential, both parties rejected the arbitration award, and Plaintiffs' "falsities" have no bearing on claims before the Court. (*Id.*) Plaintiffs counter that motions to strike are heavily disfavored and that Defendants failed to cite to the full language of § 6204(e). (ECF No. 132 at 13-14.) Additionally, Plaintiffs argue the arbitration cannot be deemed confidential when Defendants included the arbitration award along with their notice of rejection, and did so without seeking to file it under seal. (*Id.* at 16.) The Court agrees with Plaintiffs.

Cal. Bus. & Prof. Code § 6204(e) states, "Except as provided in this section, the award and determinations of the arbitrators shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding." A plain reading of this statute suggests that Plaintiffs' multiple references to the arbitration and arbitration award throughout the FAC, (*see* ECF No. 121 at 6, 9-12, 19, 21, 22, 33, 51-52), is inadmissible. However, the Court is perplexed that Defendants are seeking to strike references to the arbitration and the arbitration award—in part, arguing confidentiality— when in fact, Defendants have attached the award as an exhibit to their notice of rejection (*see* ECF No. 108-1 at 2-21). An examination of the award reveals a detailed recounting of the issues, background, testimonies, and the legal conclusion pertaining to the arbitration that Plaintiffs reference in their FAC. (*Id.*) If Defendants hold a genuine expectation of confidentiality, as they appear to suggest in citing to *Vedder Price P.C. v.*

*US Capital Partners, LLC*, then Defendants would have sought to seal the arbitration award as the party holding an expectation of confidentiality did in *Vedder Price P.C.* Case No. 16-CV-6787 (JPO), 2019 WL 1986737 at *1 (S.D.N.Y. May 6, 2019). But Defendants have not done so. As such, it would be incongruous for the Court to find Defendants have sufficiently shown they would suffer prejudice when much of the confidential information they seek to strike in the FAC already exist on their own accord when they filed the arbitration award without a request to seal. The Court thus declines to strike references to the arbitration and arbitration award in the FAC.

### 4.      Other Parts

Defendants additionally move to strike from the FAC the legal arguments that are not factual allegations, attacks on defense counsel, and Plaintiffs' prayer for relief in paragraph 8 of the relief sought. (ECF No. 125 at 16-17.) Plaintiffs counter that motions to strike are an extreme remedy that are heavily disfavored. (ECF No. 132 at 12-13.) Plaintiffs additionally argue that Defendants offer no basis to support striking what Defendants characterize as legal arguments, and that Plaintiffs' allegations against defense counsel are material and pertinent to this action. (*Id.*) The Court agrees in part with Plaintiffs.

The Court finds the various parts Defendants seek to strike, again, do not warrant the "disfavored" act of striking these parts. *See Roadhouse*, 290 F.R.D. at 541. Nor does the Court again find that Defendants have shown these parts to be prejudicial if the Court did not strike them. *Id at.* 543. Accordingly, and for all the reasons stated above, the Court denies Defendants' motion to strike in its entirety.

### C.      Plaintiffs' Motion to Strike[7]

Plaintiffs move to strike Love's filing of his notice of rejection of the arbitration award and his request for a trial *de novo.* (ECF No. 122.) Citing to Cal. Bus. & Prof. Code § 6204(c), Plaintiffs argue that the non-binding arbitration between the parties

---

[7]The Court has reviewed Defendants' response and Plaintiffs' reply. (ECF Nos. 123, 127.)

commenced on May 13, 2019, which was prior to Love being named a Defendant on July 25, 2019, in this action. (*Id.* at 3.) Additionally, Plaintiffs argue that because the parties have both filed actions in the San Diego Superior Court, Love's filing of his rejection is therefore a "nullity" and does not transfer jurisdiction to this Court. (*Id.* at 3.) Defendants counter that this action is the "action pending" as prescribed by § 6204(b) of the Cal. Bus. & Prof. Code. (ECF No. 123 at 8.) And that, despite Plaintiffs' jurisdictional contention, an "action pending" includes actions before federal courts. (*Id.* at 8-9.) The Court agrees with Defendants.

Section 6204(b) of the Cal. Bus. & Prof. Code provides in pertinent part, "[i]f there is an action pending, the trial after arbitration shall be initiated by filing a rejection of arbitration award and request for trial after arbitration in that action within 30 days after service of notice of the award." Here, the arbitration panel of the SDCBA issued the arbitration award on February 1, 2021. (ECF No. 108-1 at 2-21.) Love rejected this and proceeded, on March 3, 2021, to file a notice of his rejection in this action, which was filed in May 2019. (ECF No. 108.) Based on a plain reading of § 6204(b), the Court finds that Love properly complied with the statute.

While the Court recognizes that Love was not named in the original complaint, and that he became a defendant in this action after arbitration in California commenced, Love has nevertheless been a party in this action well before the arbitration award was issued. Without convincing authority to persuade it otherwise, the Court declines to interpret "action pending" within § 6204 to require an existing action between the parties prior to arbitration commencing instead of when a final determination is rendered. Moreover, Plaintiffs provide no legal basis to support their argument that because the parties commenced actions in San Diego Superior Court, those actions null Defendants' notice of rejection. Nor is the Court convinced, in light of existing caselaw, that "action pending" excludes federal actions. *See Vedder Price P.C.*, 2019 WL 1986737 at *1 (explaining that the parties resumed their federal action after arbitration proceedings in California had ended, and the parties rejected the arbitration outcome); *Herbold v.*

1
2
3
4
*Millard*, Case No. CV 02-01639 DDP (PJWx), 2004 U.S. Dist. LEXIS 31243, at *4-*5 (C.D. Cal. Aug. 5, 2004) (recounting that federal action resumed after plaintiff rejected arbitration decision following non-binding arbitration proceedings before Los Angeles County Bar Association). Accordingly, Plaintiffs' motion to strike is denied.

5
### D.    Plaintiffs' Motion for Speedy Hearing[8]

6
7
8
9
10
11
12
13
Plaintiffs move under Rule 57 for a speedy hearing on their seventh cause of action—declaratory judgment. (ECF No. 143.) Plaintiffs argue that the binding effect and enforceability of the 1992 Agreement is straightforward, simple, and will narrow the issues in this action for trial. (*Id.*) Defendants counter that the issue pertaining to the enforceability of the 1992 Agreement has already been before the Court. (ECF No. 144.) Defendants also argue the declaratory judgment claim remains dependent on whether the 1992 Agreement was fully executed, which remains a disputed fact. (*Id.* at 11-13.) The Court agrees with Defendants.

14
15
16
17
18
19
20
21
22
Plaintiffs had previously filed a motion for summary judgment on their declaratory judgment claim in their TAC, arguing there was no genuine issue of material fact regarding the validity of the 1992 Agreement. (ECF No. 51.) The Court found that "[a] rational trier of fact could reasonably find there was no agreement," thus a "genuine issue of material fact exists as to the fully executed Agreement." (ECF No. 120 at 10-14.) As such, a hearing pursuant to Rule 57 would not resolve the factual dispute pertaining to the validity of the 1992 Agreement and would merely rehash arguments already addressed by the Court. Disputed facts remain for a jury to resolve. Plaintiffs' motion for a speedy hearing is therefore denied.

23
### IV.    CONCLUSION

24
25
26
27
The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

28
---
[8]The Court has reviewed Defendants' response and Plaintiffs' reply. (ECF Nos. 144, 149.)

1    determines that they do not warrant discussion as they do not affect the outcome of
2    motions before the Court.

3          It is therefore ordered that Defendants' motion to partially dismiss (ECF No. 124)
4    claims in the FAC is granted. Plaintiffs' fraud and fraudulent transfer claims in the FAC
5    are dismissed.

6          It is further ordered that Defendants' motion to strike (ECF No. 125) is denied.

7          It is further ordered that Plaintiffs' motion to strike (ECF No. 122) is denied.

8          It is further ordered that Plaintiffs' motion for a speedy hearing (ECF No. 143) is
9    denied.

10         DATED THIS 23rd Day of February 2022.

14         _____
           MIRANDA M. DU
           CHIEF UNITED STATES DISTRICT JUDGE

16